## ATTORNEY GENERAL *vs.* WALWORTH LIGHT AND POWER COMPANY.

Suffolk.   June 1, 2, 1892. — June 24, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Corporation — Electric Wires — Statute — Injunction.*

The St. of 1887, c. 382, § 3, provides: "In any city or town in which a company is engaged in . . . the manufacture and sale of electric light, no other company shall lay or erect wires over or under the streets, lanes, and highways of such city or town for the purpose of carrying on its business, without the consent of the mayor and aldermen," etc. An information was brought by the Attorney General under the above statute and that of 1885, c. 314, § 13, to restrain the defendant company, which was incorporated since the St. of 1887, from using certain wires over which it furnished electricity for lighting in a city. There were companies in the city engaged in the manufacture and sale of electric light at the date of the act, and the defendant had not obtained the consent required by it. The wires were of three classes: first, two wires in a tunnel under a street, laid without license by a predecessor of the defendant; secondly, wires put up by the defendant and belonging to it, throughout their entire length, except where they crossed the streets, the portions which crossed the streets having been sold by the defendant to its customers, or put up by the defendant

for its customers in some instances, in others having been put up by the customers with the intent to evade the statute; thirdly, wires put up by customers, and belonging to them, the intent presumably being again to evade the statute. *Held,* that the statute impliedly prohibited the maintenance and use of all the wires, and that an injunction should issue.

HOLMES, J. This is an information by the Attorney General, under the Sts. of 1887, c. 382, and 1885, c. 314, § 13, to restrain the defendant from maintaining or using certain wires over which the defendant furnished electricity for lighting. The defendant was incorporated since the passage of the St. of 1887, c. 382. By § 3 of that act, "In any city or town in which a company is engaged in . . . the manufacture and sale of electric light, no other company shall lay or erect wires over or under the streets, lanes, and highways of such city or town for the purpose of carrying on its business, without the consent of the mayor and aldermen," etc. There were companies in Boston engaged in the manufacture and sale of electric light at the date of the act, and the defendant has not obtained the consent required by it. The wires in question are of three classes: first, two wires in a tunnel under Hawley Street, laid without license by a predecessor of the defendant, and now belonging to the defendant; secondly, wires put up by the defendant and still belonging to the defendant, throughout their entire length, except where they cross the streets, the portions which cross the streets having been sold by the defendant to its customers, or put up by the defendant for its customers in some instances, in others having been put up by the customers, these devices being intended by the parties to evade the statute; thirdly, wires put up by customers, and belonging to them, the intent presumably being again to evade the statute. The question is whether these wires fall within the statute.

The Legislature may think that a business like that of transmitting electricity through the streets of a city necessarily must be transacted by a regulated monopoly, and that a free competition between as many companies and persons as may be minded to put up wires in the streets and to try their luck is impracticable. Without wasting time upon useless generalities about the construction of statutes, it is enough to say that the statute before us had that consideration in view, and must be construed accord-

ingly.  We agree that we cannot supply a *casus omissus*.  But the fair scope and meaning of the words used, and the number of cases included, will vary more or less according to the purpose of the act.  To take an example a little different from these examples before us, we think it plain that, if somebody else put up a wire, and then the company bought it and used it for the business of furnishing and selling electric light, the case would be within the meaning of the words used, although the company did not erect the wire in a literal sense or cause it to be erected. In other words, the reason why the statute forbids laying or erecting wires is to prevent wires being maintained in the streets. If they vanished as soon as erected, the Legislature never would have prohibited the mere act of putting them there.  But when the Legislature forbids erecting wires for the express purpose of preventing their being maintained, it impliedly forbids their being maintained.  We are of opinion that the case is not changed by the wires having been laid by a predecessor who was not within the prohibition of the statute, if that be the fact as to the wires in Hawley Street.

We are of opinion that similar reasoning applies with greater force to the use of the second class of wires by the defendant. It seems to us quite out of the question to say that a company may escape the prohibition of the statute by turning over to a customer so much of each wire as crosses a street, and then continuing to use the wire.  If it is forbidden to erect, it is forbidden to use wires which it has erected.  And it is within the words of the act, as well when it erects a wire technically as a servant of its customer with intent to use the wire for the purposes of its business, but to evade the act, as when it erects it on its own behalf.  We agree that we cannot order wires to be taken down, the owners of which are not before us.  But we can order the defendant not to use them.

With much more hesitation we have come to the same conclusion about the wires put up by customers.  If a use of them by the company for the purposes of its business is permitted, the statute is made nugatory by an easy evasion.  It was suggested that in some of these cases the company did not sell electric light because it did not own the device at the customer's end by which the electricity furnished took the form of light, — that the

company only sold electricity. We think it quite clear that the Legislature took no such nice distinctions, and that a wire which is prohibited when used to furnish electric light is prohibited equally when used to furnish electricity for the purpose of conversion into light at the end of the wire.

*Injunction accordingly.*

*C. A. Snow & E. W. Burdett,* for the plaintiff.

*E. R. Champlin,* for the defendant.