(No. 24874.—

THE AMERICAN LEGION POST NO. 279 *et al.* Appellants, *vs.*
EDWARD J. BARRETT *et al.* Appellees.

*Opinion filed February 15, 1939—Rehearing denied April 5, 1939.*

WILLIAM MCKINLEY, R. L. NORTHCUTT, and CARL E. ROBINSON, (PAUL E. PRICE, of counsel,) for appellant Roy K. Adair, Receiver; BROWN, FOX & BLUMBERG, BELLATTI, SAMUELL & ARNOLD, and VAUGHT, FOREMAN & CLEARY, (JACOB LOGAN FOX, ORVILLE N. FOREMAN, EDWARD W. CLEARY, and WALTER BELLATTI, of counsel,) for other appellants.

OTTO KERNER, Attorney General, (A. B. DENNIS, and JOSEPH A. LONDRIGAN, of counsel,) for appellees Edward J. Barrett and John C. Martin; MOSES, KENNEDY, STEIN & BACHRACH, BROWN, HAY & STEPHENS, WILSON & MC-ILVAINE, BARBER & BARBER, LOWENHAUPT & WOLFF, and THOMAS E. KEANE, (WALTER BACHRACH, LOGAN HAY, J. F. DAMMANN, HERBERT KENNEDY, GEORGE FIEDLER, CLAYTON J. BARBER, OSCAR M. WOLFF, and ALTON G. HALL, of counsel,) for other appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants, as creditors of the Ayers National Bank of Jacksonville, Illinois, filed a representative suit against appellees Edward J. Barrett and John C. Martin, former State Treasurers, Roy K. Adair, receiver of the bank, and the appellee insurance companies as sureties on the bonds of Barrett and Martin as State Treasurers, to recover, for distribution among the creditors of the bank, the proceeds of certain securities deposited with Barrett as State Treasurer as a pledge for State funds deposited with it by him and later liquidated by appellees Barrett and Martin as such State Treasurers.

The receiver filed an answer admitting the allegations of the complaint except such as charge a refusal on his part to institute proper suit to recover for the creditors, and filed a counter-claim setting out that on December 9, 1937, he had filed a claim against the State of Illinois in the court of claims and adopting the allegations of the amended bill admitted by him, prayed that the sums found due from appellees be paid over to him as receiver for distribution in due course of administration. All other defendants filed motions to strike the amended complaint and dismiss the suit. These motions were ordered to stand as like motions to the counter-claim of the receiver. On hearing, the motions to strike were sustained and the complaint and counter-claim were dismissed. Appellants come directly here because, they say, a constitutional question is involved.

The sufficiency of the complaint is the matter in issue on this review. The following facts are by it averred: The Ayres National Bank, hereinafter designated as the bank, closed its doors on November 19, 1932. It had more than six thousand creditors and an indebtedness exceeding $5,000,000, with assets available for payment of creditors amounting to about $2,600,000. A receiver was appointed by the Comptroller of the Currency, to whom appellant Adair is successor. At the time of the closing of the bank Edward J. Barrett, as State Treasurer, had on deposit therein the sum of $1,803,615.89, and had in his possession securities, pledged by the bank as collateral security for the deposit of State moneys, of a par value of $2,814,630. When the bank closed he, as State Treasurer, made demand upon the receiver for payment in full of the amount of the deposit of State funds, and notified him that unless payment be made he would proceed to sell the securities he held as collateral to the deposit. The receiver refused to pay and Barrett proceeded to sell the securities and credit the proceeds in reduction of the deposit liability of the bank.

At the close of his term of office he had liquidated all but about $300,000 par value of the collateral, which he delivered to appellee Martin as his successor in office as State Treasurer. Martin continued to liquidate the securities so held as collateral until he had received sufficient money to repay the deposit account to the State in full, and delivered the remaining securities to the receiver. In liquidating the affairs of the bank the receiver has paid to the general creditors twenty-five per cent of their claims, which, with payment in full of the State's claim, reduced unpaid claims to about $2,400,000, with remaining assets in his hands of about $150,000.

On December 6, 1937, appellants, as creditors of the bank, in their representative capacity, made demand upon appellant receiver of the bank, that he take action against Barrett and Martin, and the sureties on their bonds, to recover the value of the securities pledged with the State Treasurer. As he did not do so, they, on December 14, 1937, brought this present proceeding.

The amended complaint consists of eleven counts. With the exception of counts 7 and 8, which declare upon moneys had and received, all the counts proceed upon the theory that the bank had no power to pledge assets with the State Treasurers to secure deposit of State funds, and that the State Treasurers, in disposing of that collateral and applying it to the State's claim, were guilty of conversion. The prayer is that an accounting be had concerning the disposition of the securities and that the defendants be ordered to pay to a special depositary or receiver such amounts as may be found due the creditors of the bank, and that the same be disbursed ratably among all creditors of the bank, under court order.

Appellants' contentions, made here, are: (1) The trial court erred in holding that an act entitled: "An act in relation to State moneys," approved June 28, 1919, (Ill. Rev. Stat. 1937, chap. 130, pars. 20 to 42,) is constitutional.

(2) That the court erred in holding that, even though that act be invalid, the defendants, the State Treasurers, are not personally liable upon the facts alleged. (3) The court erred in sustaining the motions of the defendants to strike and in dismissing the amended complaint.

Appellees, to sustain the decree, contend: (1) That the State has a sovereign right of priority to payment of the State's debts by virtue of which the bank was authorized to pledge assets with the State Treasurers, and the State Treasurers were authorized to sell the assets of the bank to pay its deposit with the bank. (2) That the Deposit act of 1919 is constitutional. (3) That this is in fact a suit against the State, and that the supposed cause of action is barred by the Statute of Limitations and *laches.* They also question the authority of the appellants to prosecute this cause for the reason that the receiver did not refuse to institute legal proceedings. Other questions are raised on the record but these constitute the controlling issues.

The first section of the Deposit act of 1919, (Ill. Rev. Stat. 1937, chap. 130, par. 20, p. 3102,) requires that the State Treasurer deposit all moneys received by him on account of the State, within five days after receiving it, in such banks in the State as may be authorized to receive deposits under the terms of the act. Section 10 of the act provides: "No moneys in the State Treasury shall be deposited in any bank approved as a depositary under the terms of this act until such bank shall have deposited securities with the State Treasurer equal in market value to the amount of moneys deposited." By section 11 of the act the State Treasurer is empowered, in his discretion, to accept bonds of the United States or other securities therein designated, and the bank is authorized to demand the return to it of securities in excess of those required to protect the deposits of State money. Under section 12, "All securities deposited by approved banks under the provisions of this act shall remain the property of the banks depositing such

securities. Should the depositary refuse or fail to pay over the moneys, or any part thereof, deposited with it when due and payable, the State Treasurer may sell such securities in accordance with the terms of any agreement between the State Treasurer and the depositary bank. * * * The surplus, if any, over the amount due to the State and the expenses of the sale shall be paid to the depositary," etc.

The grounds upon which appellants urge the invalidity of this act are that it is an amendment of the Banking act which has not been submitted to a vote of the People, as required by section 5 of article 11 of the constitution of 1870, and that it constitutes an attempted limitation on the powers of the State Treasurer, a constitutional officer. The pertinent language of that section is: "No act of the General Assembly authorizing or creating corporations or associations with banking powers, whether of issue, deposit or discount, nor amendments thereto, shall go into effect or in any manner be in force unless the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law."

Appellees reply to the first contention that, by reason of the sovereign right of priority of the State, which has an equitable lien against the assets of banks for debts due for State funds, the act is valid, and that it is not an amendment of the Banking act and so needs no referendum to render it effective. They say, as to the second ground of claimed invalidity, that the act does not limit the constitutional powers of the State Treasurer, and even if it did, appellants are not entitled to raise that question since the provision affects alone the State Treasurer.

First, then, does the State have a right of priority in the payment of its claims for State funds, and if so, does it amount to an equitable lien on the assets of the bank which empowers the legislature or the State Treasurer to protect the State's claim by demanding a pledge of securities

for deposits of State funds? In *People* v. *Farmers State Bank,* 335 Ill. 617, it is pointed out that the State, by reason of its sovereignty, had, under the common law as it existed at the time it was adopted by this State, a right to priority in the payment of debts due it, and that the legislature, at the first session after Illinois became a State, adopted the common law of England and all statutes in aid of it prior to the fourth year of James I, except certain statutes not material here, as the rule of decision in this State, to be in full force until repealed by legislative authority. It is also pointed out that such has continued to be the law of this State from that time. No act of the legislature repealing that provision of the common law has been passed.

In *People* v. *West Englewood Bank,* 353 Ill. 451, it was held that a depositary act, therein referred to as "County Treasurer act," does not supersede the common law on the matter of the State's priority to payment of its claims. It is there said: "While a few courts have held that the prerogative does not exist by reason of the adoption of the common law of England as a part of the law of a State, the overwhelming weight of judicial opinion is that it does exist, with all its force and vigor, so far as it concerns the right of the people to a priority of payment of debts due them. This court has repeatedly held that the people of this State have succeeded to all the prerogatives of the sovereign as to such debts. Under the common law of England one of the prerogatives of the sovereign was the right to have debts due him by an insolvent person paid in preference to the rights of creditors whose claims were not secured by valid liens. This right of priority is a prerogative of the crown well known to the common law. It is founded not so much on any personal advantage to the sovereign as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens

and discharge the public debts. (*United States* v. *State Bank of North Carolina,* 6 Pet. 29, 8 L. ed. 308.) The crown of Great Britain, by virtue of a prerogative right had priority over all subjects for the payment out of a debtor's property of all debts due it. The priority was effective alike whether the property remained in the hands of the debtor or had been placed in the possession of a third person or was in *custodia legis.* (*Marshall* v. *New York,* 254 U. S. 380.) That this doctrine has been adopted and accepted as suitable to the system of government of Illinois is definitely settled. (*People* v. *Farmers State Bank, supra; People* v. *Bank of Chebanse,* 340 Ill. 124.) * * * If the legislature intended that a time-honored method of protecting the public revenues should be discarded we think it would have expressly said so."

In *People* v. *Oregon Savings Bank,* 357 Ill. 545, it was contended that the common law prerogative of sovereignty in the State to have priority of the payment of its claims, had been abrogated by the Banking act. The well-established rule was there pointed out that the rights of the sovereign are never impaired by general legislative enactment unless such an intent is expressly declared in the statute. (Citing *Guarantee Title and Trust Co.* v. *Title Guaranty and Surety Co.* 224 U. S. 152, 56 L. ed. 706, and numerous other cases.) In the *Oregon Savings Bank case* this court said: "The priority claimed in the case at bar is founded upon motives of public policy to secure an adequate revenue to sustain the public burdens and to discharge the public debts. (*United States* v. *State Bank of North Carolina,* 6 Pet. 29; *People* v. *West Englewood Bank,* 353 Ill. 451; *People* v. *Marion Trust and Savings Bank,* 347 id. 445.) This preference or priority is for the benefit of the public; and in the absence of a statutory provision clearly manifesting a legislative intent to abdicate this sovereign prerogative, the duty devolves upon the courts to

preserve rather than to destroy it." This court, in that case, held that the Banking act did not abrogate the common law priority of claim of the State.

Again, in *People* v. *Wiersema State Bank,* 361 Ill. 75, it is held that no legislation is necessary to establish or preserve the State's sovereign right to a preference over general creditors in the distribution of the assets of a closed bank. It was held, however, that as to the political subdivisions of the State such preferential right did not exist and that banks had no authority to pledge assets to secure deposits of such political subdivisions.

In *Cook County Nat. Bank* v. *United States,* 107 U. S. 445, 27 L. ed. 537, and in *Smith* v. *Alabama,* 124 id. 465, 31 L. ed. 508, and *Wheaton* v. *Peters,* 8 Pet. 591, it was held that a claim of the United States to priority of payment over other creditors must find its foundation in the provisions of acts of Congress, because there is no common law of the United States in the sense of a national customary law distinct from the common law of England as adopted by the several States. In *Marshall* v. *New York,* 254 U. S. 380, 65 L. ed. 315, the court recognized the right of a State to exercise its prerogative of priority of payment solely derived from the common law adopted by the State. In that case the opinion presented by Mr. Justice Brandeis, in speaking of the priority of a State to payment of its claims, said: "This priority arose and exists independently of any statute. The legislature has never in terms, limited its scope; and the courts have rejected as unsound every contention made that some statute before them for construction, had, by implication, effected a repeal or abridgment of its priority. * * * The priority of the State extends to all property of the debtor within its borders, whether the debtor be a resident or a non-resident, and whether the property be in his possession or in *custodia legis.* The priority is, therefore, enforceable against the property in the hands of a receiver appointed by a Federal court within the State. * * * The State's right to be paid out

of the assets prior to other creditors does not, as pointed out in *In re Tyler, supra,* (quoting *Greely* v. *Provident State Bank,* 98 Mo. 458, 11 S. W. 980,) arise from an express lien on the assets existing at the time they passed into the receiver's hand. [Citing cases.] The right of priority has been likened to an equitable lien. (*State use of Phillips* v. *Rowse,* 49 Mo. 586.) The analogous preference in payment given to claims for labor by State statutes, and to which the Bankruptcy act gives priority, has been described as being 'tantamount' to a lien. [Citing cases.] The priority is a lien in the broad sense of that term, which includes 'those preferred or privileged claims given by statute or by admiralty law.' (2 Bouvier's Law Dict. (15th ed.) 1883, 1888.) The prerogative right of the State resembles the privilege accorded by the civil law of Louisiana to certain classes of debts, which it was assumed in *Burdon Cent. Sugar Ref. Co.* v. *Payne,* 167 U. S. 127, 42 L. ed. 105, would be enforced against property in the custody of a receiver appointed by a Federal court. The fact that the right rests on the common law, independently of any statute, does not, of course, affect the right of enforcement in the Federal courts." The prerogative right of the State to priority in payment of its claims is also recognized in *City of Marion* v. *Sneeden,* 291 U. S. 262, 78 L. ed. 787, and in *Lewis* v. *Fidelity and Deposit Co. of Maryland,* 292 id. 559, 78 L. ed. 1425.

As we have seen, in *People* v. *West Englewood Bank, supra,* the Deposit act relating to county treasurers does not supersede the common law as to the State's equitable lien and we may, therefore, proceed upon the safe assumption that, as was held in *People* v. *Oregon Savings Bank, supra,* where the State's right and that of the depositors meet at one and the same time, the State shall have the right to be preferred.

We come then to the question whether the State, under the Deposit act of 1919, has a right to demand the pledging of assets or whether such constitutes, in effect, an amendment

of the Banking act, which amendment not having been submitted to a vote of the people, fails of constitutional requirement. It must be conceded at the outset of the consideration of this point, that the Deposit act of 1919 does not purport to be an amendment of the Banking act. While it is argued that it indirectly extends the powers of banks, it must be borne in mind that not every act that affects banking is to be considered an amendment of the Banking act.

In *People* v. *Gould,* 345 Ill. 288, an act entitled: "An act for the protection of bank depositors," was under attack, and it was argued that it was an amendment to the Banking act which had not been submitted to a vote of the people, as required by section 5 of article 11 of the constitution. It was there pointed out that the subject matter of the section of the constitution referred to is the organization of corporations or associations having banking powers, and that whatever act may be passed on that subject must receive the approval of a vote of the people, and so must every amendment. It was held that the act for protection of bank depositors was in no sense inconsistent with the Banking act or amounted to an amendment of it.

In *McQueen* v. *Randall,* 353 Ill. 231, an act defining the relations between banks and their depositors, with reference to the deposit and collection of checks and other instruments, was attacked as being an amendment of the Banking act without referendum. It was held not to be an amendment to the Banking act. So in *People* v. *First State Bank and Trust Co.* 364 Ill. 294, the act for the protection of bank depositors was again attacked as being prohibited by section 5 of article 11 of the constitution because not submitted to a vote of the people. It was there pointed out that the act has nothing to do with the organization of corporations or associations with banking powers, nor with any act of the General Assembly amending laws on that subject.

A test of whether an act may be said to amend the Banking act is whether it gives additional banking powers

to the bank or changes the relationship or primary obligation existing between banks and their depositors. As we have seen, the State, since its origin, has the sovereign right of priority for the repayment of State funds, amounting to an equitable lien on all the assets of its debtor, which prior right existed before the present, or any preceding Banking act, came into existence, and which the Banking act has not taken away nor in any way abrogated. (*People* v. *Oregon Savings Bank, supra.*) It follows that the State's priority right is co-extensive with the Banking act, and must be taken to have been a part of all Banking acts of the State and construed with such acts. By the Banking act banks are empowered to receive deposits but that power must be construed, when relating to deposits of State funds, in the light of the State's equitable lien over all the assets of the bank to secure the repayment, on demand, of these funds. This equitable lien exists as to all the assets of the bank. *Marshall* v. *State of New York, supra; Lewis* v. *Fidelity and Deposit Co. of Maryland, supra; People* v. *Oregon Savings Bank, supra.*

How can it be said that the Deposit act of 1919, which requires the State Treasurer to exact a pledge of securities for State deposits, extends the powers of banks, when the priority of the claim of the State already exists over all the bank's assets to repay such deposits? The effect of such a pledge under this act is to release the remainder of the bank's assets from such an equitable lien to the extent that the assets pledged shall first be applied to payment of the State's claim. It cannot be doubted that the State has a right, through the General Assembly, to adopt any appropriate method of protecting its prior claim to payment of debts due it. This right, not being denied or limited by the Banking act, exists and always has existed as a part of the present and all preceding banking acts. The provision requiring a pledge of securities for deposit of State funds is but a method of doing what the State has always had the

power to do, for at any time the State may step in and appropriate the assets of a bank to pay its claims. The Deposit act of 1919 in nowise enlarges banking powers nor amends the Banking act as to such powers.

Nor does the Deposit act of 1919 change the relation existing between the bank and its depositors. Their claims against the bank have always been subordinate to the claim of the State, and the fact that by the Deposit act of 1919 the State may take possession, as a pledge, of a portion of the assets, when over all the bank's assets it has an equitable lien, does not change the relationship existing between the bank and its depositors, nor in any way lessen their right to recover their claims against the bank, for such right has always been subject to the prior right of the State. Cases cited in the briefs holding that the pledging of assets would be an unauthorized extension of banking powers, such as *People* v. *Wiersema State Bank, supra, Knass* v. *Madison and Kedzie Bank,* 354 Ill. 554, and *People* v. *West Englewood Bank, supra,* and others, all have to do only with the power of banks to pledge their assets to creditors who do not have, in the absence of such pledge, a prior right over all other creditors. The ground of such holdings is that banks, by pledging securities, create a preferred class of creditors, which is against public policy and the intent of banking law. Under the law of this State, as relates to claims of the State, however, banks do not so create the State a preferred creditor. It is such by law whether securities are pledged or not. The State does not stand in relationship to the bank as do other creditors. The effect of a pledge to it is not an extension of banking powers nor a change in the relationship of the bank to its depositors.

Nor do we think the Deposit act of 1919 is invalid as limiting the powers of the State Treasurer. It does not take from the State Treasurer any of his constitutional powers or duties, as is supposed. It is conceded that the State Treasurer's constitutional duty is to protect State

funds in his possession and that he is in fact an insurer of those funds. Whenever banks receive the deposits of State money, they receive them, as we have seen, subject to the equitable lien of the State to have that money repaid out of the assets of that bank before any other claims are paid. The Deposit act of 1919, while it defines the method of preserving the equitable lien of the State, neither modifies nor attempts to set aside the constitutional duty of the State Treasurer, as insurer of the funds, but prescribes methods merely of preserving the equitable lien of the State.

It is a rule frequently stated by this court, that the General Assembly may not take away from a constitutional officer the powers or duties given him by the constitution. The constitution, by section 1 of article 5 provides that public officers, including the State Treasurer, shall perform such duties as may be required by law. Nothing in the constitution further defines the duties of the State Treasurer. This court has held that those duties are such as are to be implied from the nature of the office and of them he may not be deprived or relieved. *Fergus* v. *Russel,* 270 Ill. 304; *Plummer* v. *Yost,* 144 id. 68.

We are unable to agree with the contention that this act deprives the State Treasurer of his powers or duties. It is more directly an act to aid in the preservation of the State's funds. It may be observed, however, that even if it be said that the act limits the discretion of the State Treasurer as a constitutional prerogative, the State Treasurer has not only not complained of it but has voluntarily followed it, and whether what he did was in compliance with an act or the exercise of his own discretion, such was done voluntarily and is not a matter of which appellants can complain on this ground.

But counsel for appellants say that while a State may have a prior right to payment of its claim in the settlement of the affairs of a State bank, such cannot be done in the case of a national bank, but that the rule of ratable distribu-

tion of proceeds excludes any priority of the State's claim over the assets of a national bank. It has long been settled that a national bank is subject to State laws unless those laws interfere with the purposes of its creation, or destroy its efficiency, or are in conflict with some paramount Federal law. (*Lewis* v. *Fidelity and Deposit Co. of Maryland, supra; First Nat. Bank* v. *Missouri*, 263 U. S. 640, 68 L. ed. 486; *McClellan* v. *Chipman*, 164 id. 347, 41 L. ed. 461.) Furthermore, the Supreme Court of the United States has held the doctrine of ratable distribution inapplicable to a creditor who has a preferred claim. *Ticonic Nat. Bank* v. *Sprague*, 303 U. S. 406, 82 L. ed. 926.

On June 25, 1930, Congress enacted an amendment to its Banking laws, the pertinent portion of which is as follows: (U. S. C. A. title 12, sec. 90.) "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located, in case of other banking institutions in the State." The right of national banks to give security of the same kind as is authorized by the laws or public policy of the State in which such banks are located, has been upheld in *Lewis* v. *Fidelity and Deposit Co. of Maryland, supra; City of Marion* v. *Sneeden, supra*, and *Texas and Pacific Railway Co.* v. *Pottorff*, 291 U. S. 245, 78 L. ed. 777. As it is our view, expressed herein, that under the laws of this State, by reason of the priority of State claims, a State bank has power to pledge its assets for deposit of State money, it follows from the quoted act of Congress and the holdings of the Supreme Court of the United States, that such power is given to the bank in this case. We are of the opinion that the contention of appellants as to the invalidity of the Deposit act of 1919 can not be sustained, and that there was no unlawful pledging of the assets of the bank in this case to the State Treasurer.

There is another frailty in plaintiffs' claim to equitable relief as stated by the bill of complaint. There is no charge that in the liquidation of the securities deposited with the State Treasurer the same were sacrificed or disposed of for less than their market value. It is argued in the briefs that if more time had been taken in their disposition the market might have been better, as they were put upon a badly depressed market. But there is no allegation in the complaint that such were the facts, and if such averments appeared, such facts would not justify the State Treasurer in waiting to see whether the market might improve, since the right of the State to prompt payment of its claims is based on the requirements of government. In this case the securities not required to meet the State's demands were turned over to the receiver and by him sold. So far as this complaint shows, as much was realized from the securities liquidated by the State Treasurer as could have been procured by any other person. While the bill avers that appellants were damaged, that averment rests, as we have seen, upon the theory that the sums to be derived from the sale of the assets pledged with the State Treasurer should be returned to the receiver to be distributed ratably among all creditors, including the State. This view, as we hold, cannot be sustained. How, then, can it be said that appellants were harmed by the manner in which the disposition of these securities has been had, or in fact by the pledging of them to the State? The State's right of priority exists. It is not shown that the creditors did not receive as much benefit from the sale of these securities by the State Treasurer as they would have received had the receiver disposed of them. In fact, so far as the record shows, the liquidation of the securities may have been at less expense by the State Treasurer than by the receiver who would be entitled to fees for collecting same. Since the claims of common creditors are, at all events, subordinate to the claims of the State, the only ground upon which the former can show themselves to

have been damaged is by showing a sacrifice of the securities. No such averment appears.

Other questions arise on this record, but as the views herein expressed dispose of the cause, it is unnecessary to consider further issues. The chancellor did not err in sustaining appellees' motion and dismissing this cause, and his decree is affirmed.

*Decree affirmed.*