(Nos. 3804, 3903, 3941

EDWARD J. BARRETT, Claimant *vs.* STATE OF ILLINOIS, Respondent. GREAT AMERICAN INDEMNITY COMPANY OF NEW YORK, a corp. Claimant, *vs.* STATE OF ILLINOIS, Respondent.

EDWARD J. BARRETT, Claimant, *vs.* STATE OF ILLINOIS, Respondent.
*Opinion filed March 25, 1947.*

NASH, AHERN, McDERMOTT & McNALLY, of Chicago, for Claimant, EDWARD J. BARRETT.

MOSES, BACHRACH & KENNEDY, MR. FELIX VISK, of Counsel, for Claimant, GREAT AMERICAN INDEMNITY COMPANY OF NEW YORK.

ARRINGTON, FIEDLER & HEALY, (MR. GEORGE FIEDLER & MR. THOMAS AMBERG, of Counsel) for Claimant, EDWARD J. BARRETT.

GEORGE F. BARRETT, Attorney General, and WM. L. MORGAN, Assistant Attorney General, for respondent.

ECKERT, C. J.

On June 1, 1943, the claimant, Edward J. Barrett, filed his original claim in this court. (Case No. 3804). Thereafter, and until November 15, 1944, he was absent from the State of Illinois, serving as a member of the United States Marine Corps. His claim was subsequently

held to have been prematurely filed because of the pendency of litigation in the Superior Court of Cook County. *(Barrett* vs. *State of Illinois,* 13 C.C.R. 13). That litigation has since been terminated.

On February 1, 1945, the claim of the Great American Indemnity Company of New York was filed, (Case No. 3903), and on December 14, 1945, Edward J. Barrett filed a claim for the use and benefit of the Fidelity & Casualty Company of New York, a co-surety with the Great American Indemnity Company of New York, (Case No. 3941). The subject matter of the three claims being the same, on September 12, 1946, the cases were consolidated. Evidence in the consolidated cases was taken on September 18, 1946 before Commissioner East.

The Great American Indemnity Company now asks leave to withdraw its claim. Such leave is hereby granted, and the claim of the Great American Indemnity Company of New York, case No. 3903, is dismissed with prejudice.

The claims of Edward J. Barrett, claimant in cases No. 3804 and 3941, are based on the following facts: on November 4, 1930, Edward J. Barrett was elected Treasurer of the State of Illinois for a two year term beginning January 1, 1931. On December 9, 1930, he applied to the Fidelity & Casualty Company of New York to sign his official bond as a co-surety with the Great American Indemnity Company of New York, and on December 24, 1930, he executed a second application to the Fidelity & Casualty Company of New York to sign an additional bond, likewise with the Great American Indemnity Company of New York as co-surety.

Both bonds were signed, and each was in the penal sum of $500,000.00. Each application contained an indemnifying agreement which provided that the applicant

would "indemnify the Company against any losses, damages, costs, charges and expenses it may sustain, incur, or become liable for in consequence of said bond or any renewal thereof, or any new bond issued in continuance thereof or as a substitute therefor." The Fidelity & Casualty Company of New York subsequently issued the two bonds requested, with the Great American Indemnity Company of New York as co-surety. Premiums in the amount of $4,000.00 were paid by the State of Illinois; the bonds were filed in the office of the Secretary of State, and were duly approved by the Governor and two justices of the Supreme Court, all in accordance with statutory requirements. The bonds remained in full force and effect from the date of their filing until the expiration of Mr. Barrett's term of office on January 9, 1933.

On December 10, 1937, a suit was started in the Circuit Court of Sangamon County, Illinois, by American Legion Post No. 279, against the Fidelity & Casualty Company of New York, the Great American Indemnity Company of New York, and others, as defendants. On December 14, 1937 a suit was also started in the United States District Court, Southern Division, in and for the Southern District of Illinois, by Gordon L. Seeger, naming the Fidelity & Casualty Company of New York, and the Great American Indemnity Company of New York, and others, as defendants. In each suit it was alleged that Edward J. Barrett, and the Fidelity & Casualty Company of New York and the Great American Indemnity Company of New York were liable on the official bonds of Edward J. Barrett to the creditors of the Ayers National Bank of Jacksonville, Illinois, which had become insolvent in November, 1932, for the proceeds of certain securities of that bank. These securities were alleged to have been wrongfully deposited by the bank as a pledge to secure

moneys of the State of Illinois deposited with the bank prior to its insolvency, in an amount of approximately $1,800,000.00. The complaints charged that Edward J. Barrett, as State Treasurer, had converted these funds when he liquidated the securities in his official capacity.

Subsequent to the service of summons upon the bonding companies, they notified Mr. Barrett of the pendency of the suits, and that they would expect reimbursement for any loss or expense incurred by reason of the litigation. Although Mr. Barrett was represented by the Attorney General of the State of Illinois, the bonding companies, by their own counsel, moved to strike the complaints and dismiss the suits. The motion to dismiss was granted by the Circuit Court of Sangamon County, Illinois, and, upon appeal to the Supreme Court of Illinois the action of the trial court was affirmed. (American Legion Post vs. Barrett, 371 Ill. 78). The suit in the United States District Court was also subsequently dismissed.

The claimants now allege that the interests of the several defendants differed in the litigation; that it was necessary for the bonding companies to employ their own counsel for their defense; that because of these suits, the Fidelity & Casualty Company of New York sustained losses, damages, costs charges and expenses amounting to $17,541.70; that Edward J. Barrett became liable to indemnify the Fidelity & Casualty Company of New York on account of such losses, costs, charges and expenses; that the Fidelity and Casualty Company of New York has demanded reimbursement from Mr. Barrett, and that although morally and legally liable for the payment of this money, Mr. Barrett is financially unable to pay it; that because the liability was incurred by Mr. Barrett in his official capacity as Treasurer of the State of Illinois,

because the bonds were given to satisfy a statutory requirement, and because the premiums for the bonds were paid by the State, the liability is the liability of the State. Mr. Barrett further alleges, that, in incurring this liability, he was acting as an agent for the State; that such liability should be absorbed by the State; and he seeks an award for the use of the Fidelity & Casualty Company of New York in the amount of $17,541.70 to discharge the liability which it has asserted against him.

The suit in the Circuit Court of Sangamon County, which was subsequently appealed to the Supreme Court of Illinois, was based upon the theory that the Deposit Act of Illinois was unconstitutional; that the Ayers National Bank of Jacksonville, Illinois, had no power to pledge assets with the State Treasurer of Illinois to secure the deposit of State funds; and that the State Treasurer, in selling the securities held as collateral to the deposit, and applying the proceeds in payment of the deposit, was guilty of conversion.

Admittedly, Mr. Barrett had proceeded in accordance with statutory requirements. But, had the Illinois court reached a contrary decision, Mr. Barrett and his sureties would have been subjected to a liability of $1,000,000.00. On the other hand, through Mr. Barrett's prompt compliance with the statute, the State benefited to the extent of more than $1,000,000.00, the other creditors of the insolvent bank having received only 25% of their claims. The expenses incurred by Mr. Barrett and his sureties were thus incurred for the benefit of, and because of acts done for, the State of Illinois.

Mr. Barrett's claim is therefore a claim for charges incurred by him in the discharge of his official duties as State Treasurer of Illinois, in the discharge of official duties for the benefit of the State. It is clearly a claim

which the State, as a sovereign commonwealth, should discharge and pay. It is unthinkable that an elected state official, acting lawfully and in good faith, in pursuance of the statutes of the State, should be called upon to pay personally expenses of litigation brought against him in his official capacity, expenses which are clearly expenses of the State itself, and in no sense individual or personal.

The award prayed in this suit, in the amount of $17,541.79, includes attorneys fees of $17,500.00 and expenses of $41.07 paid by the Fidelity & Casualty Company of New York, to Wilson & McIlvaine, of Chicago, and to Brown, Hay & Stephens, of Springfield. These attorneys handled the case in both the Circuit and Supreme Courts. Preparation in the trial court was necessarily complete and extensive. Briefs were filed, and oral argument was had before the trial judge. In the Supreme Court likewise, a large amount of time and effort was expended because the case involved important points which had few if any direct precedents. The briefs filed on behalf of the claimants, on the appeal to the Supreme Court, form part of the record in this case. From these briefs, and from the opinion of the Supreme Court, it is obvious that the issues were many and complicated, and that the questions determined in the case were involved and serious. The decision of the Supreme Court was an important decision in that it approved the legislative policy of requiring the protection of deposits of the State from losses which otherwise might be incurred in the event of the failure of banks designated as State Depositories. The record clearly establishes that the time expended by counsel was necessary for the proper presentation and defense of the case. The hourly charge of $15.00 was reasonable for a case involving the whole

history of the banking law of Illinois, and the constitutionality of the Illinois Deposit Act, and for legal counsel of high competence.

This court is of the opinion that the Fidelity & Casualty Company of New York, because of the size and importance of the litigation was fully justified in engaging separate counsel for defense of the suits in question; that the charges incurred in the employment of such counsel were both necessary and reasonable. The court is further of the opinion, that under the provisions of the indemnifying agreement the Fidelity & Casualty Company of New York is entitled to reimbursement for the costs and charges so incurred; that the obligation is properly that of the respondent and not of Mr. Barrett personally.

An award is therefore entered in the amount of $17,-541.70 in favor of Edward J. Barrett, for the use of the Fidelity & Casualty Company of New York.