THE PEOPLE *ex rel.* John J. Brinkerhoff

*v.*

CHARLES P. SWIGERT *et al.*

*Filed at Ottawa September 24, 1883.*

1. MILITARY FUND—*act of 1883, for transfer to the general revenue fund, construed.* The term "any unexpended balance," in section 4 of the "Act to provide for the payment of the Illinois National Guard," etc., approved June 25, 1883, does not include every part of the military fund before that time levied and collected, which has not been actually paid out of the treasury prior to the first day of July, 1883, and require it to be transferred to the general revenue fund, without regard to existing claims against it. That section is held to mean that whatever may remain of the military fund after the payment of all proper and just claims against it which accrued during the year ending on and including the whole of the 30th day of June, 1883, shall be so transferred; and the fact that a part of such claims have not been actually paid before July 1, 1883, makes no difference in this respect. It is sufficient if they are adjusted and paid at any time before the fund lapses, under the 18th section of article 4 of the constitution.

2. There is nothing in said section fixing the exact time when the actual transfer of this "unexpended balance" on the books of the Auditor and Treasurer must be made. From the analogies of the law on like questions, it will be presumed that the legislature intended to allow a reasonable time to ascertain such "unexpended balance." Under section 18, of article 4, of the constitution, the appropriation, by the act of 1881, would extend until the expiration of the first fiscal quarter after the adjournment of the legislature of 1883, or until October 1, 1883, for the payment of all just claims against the same; and any transfer of such military fund before that time is premature, and unauthorized.

3. SAME—*of its distribution—statute construed.* The annual distribution of the military fund required to be made by the Governor and Adjutant-General by the act of 1879, is not for the purpose of ascertaining the total amount which is to be paid absolutely to each company for that year, but the object of the statute is, to have made an equal and equitable distribution of the fund for the purpose of being drawn on to meet the actual and legitimate expenses of each company or other subdivision of the military service. The compensation of each company or other service is fixed by law, and can not exceed what is thus fixed, although it may not exceed the distribution made by the Governor and Adjutant-General.

4. A *mandamus* will not be granted requiring the Auditor to issue, and the Treasurer to pay, a warrant in favor of a captain of a military company, for a sum based upon a division of the total appropriation for a given year,

according to the relative numerical strength of his company, without regard to the actual expenses of such company. The sum appropriated for the payment of the several companies, battalions, etc., and their expenses, is not to be paid out in the ratio the number of men and officers composing them bears to the entire militia of the State.

5. SAME—*warrants on, must be on vouchers.* The State Auditor has no authority of law, under either the act of 1881 or 1883, to issue a warrant on the military fund, except "upon the presentation of the proper vouchers," showing that it is given on account of legitimate and proper expenses incurred under the provisions of the Military Code; and such vouchers must be in writing, so as to be filed and preserved in his office. This is made a condition precedent.

6. SAME—*mere written order is not a voucher.* The mere written order of the Governor and Adjutant-General to the Auditor to draw his warrant upon the military fund, in the absence of any account, bill of particulars, or other specifications showing the character of the expenditures, or on what account the warrant is to be drawn, is clearly insufficient, as a voucher, to justify and authorize the Auditor to issue his warrant in favor of the captain of a military company of the State.

7. VOUCHER—*word defined.* The term "voucher," when used in connection with the disbursement of moneys, implies some written or printed instrument in the nature of a receipt, note, account, bill of particulars, or something of that character, which shows on what account or by what authority a particular payment has been made, and which may be filed away by the party receiving it, for his own convenience or protection, or that of the public.

8. PLEADING—*construed most strongly against the pleader.* It is a familiar rule of pleading that the allegations of a party must be taken most strongly against him. So where a direction to an officer is required to be in writing, to do a certain act, which he refuses, and the petition for a *mandamus* to compel him to act fails to show that the direction is in writing, it will be assumed there was only a mere verbal order given, and the writ will be refused.

9. APPROPRIATIONS—*when they lapse, and cease to have validity.* By a settled construction of section 18, of article 4, of the constitution of 1870, all appropriations, whether general or special, when otherwise unlimited, will continue in force and be available for the purposes intended, until the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly, at which time all appropriations must lapse, and cease to be of any validity.

This was an original application for a peremptory writ of *mandamus,* exhibited in this court. The facts of the case are stated in the opinion of the court.

Mr. JAMES A. CONNOLLY, for the relator.

Mr. JAMES McCARTNEY, Attorney General, for the respondents.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an action of *mandamus*, brought in this court by John J. Brinkerhoff, as captain of company "C," Fifth regiment, of the Illinois National Guard, against the Auditor and Treasurer, to compel the former to draw, and the latter to pay, a warrant in favor of the relator, against the military fund, for the use of said company, for the sum of $579.24, being the amount of what is claimed to be the company's distributive share of the military appropriation for the year ending June 30, 1883. Other special relief is asked, but in the view we take of the case it requires no special notice.

The petitioner alleges, in substance, that the relator is, and has been for more than two years last past, captain of company "C," Fifth regiment, of the Illinois National Guard, during all of which time said company was duly enrolled and accepted as a company in the service of the State, and subject to the lawful commands of the Governor of the State, under the provisions of the general Military act of May 28, 1879; that the number of officers and men of said company that regularly reported for duty under the provisions of said code during the year ending 30th of June, 1883, was thirty-six; that by virtue of section 1, article 10, of the Military Code, there was levied, collected, and deposited in the State treasury, a tax for military purposes for the fiscal year ending June 30, 1883, the sum of $73,173.43; that after the 30th day of June, 1883, the Governor and Adjutant-General divided and distributed three-fourths of said military fund to the several regiments, battalions and batteries of the said Illinois National Guard, in proportion to the number of officers and men regularly reporting for duty in each of them, respectively,

in accordance with the provisions of section 1, article 10, of said Military Code; that said company "C's" distributive share of said fund under such division and distribution was and is the sum of $579.24; that upon such division and distribution the Governor and Adjutant-General notified the relator that the said sum of $579.24 was due said company as its distributive share of the three-fourths of said fund, and that upon application to the Auditor he would receive a warrant on the Treasurer for that amount, for the use of said company; that the Governor and Adjutant-General also notified the Auditor of the amount thus found due said company as aforesaid, and directed the Auditor to draw his warrant on the Treasurer in favor of the relator, for the use aforesaid, for said amount; that the relator afterwards, on the 28th day of August, 1883, applied to the Auditor for a warrant on the Treasurer for said sum of $579.24, to be paid out of said military fund for the use of said company, but the Auditor refused, and still refuses, to issue the same; that on the 2d day of July, 1883, and before said distribution had been made by the Governor and Adjutant-General, as aforesaid, and before the payment of but a trifling part of the expenses named in section 2, of article 10, of said Military Code, the said Auditor, claiming to act by authority of section 4 of an act entitled "An act to provide for the payment of the Illinois National Guard for the year ending July 1, 1884, and for the year ending July 1, 1885, and to transfer balance of military fund to the general fund," approved June 25, 1883, drew his warrant on the Treasurer for the whole of said military fund actually being in the treasury on the said 1st day of July, 1883, and thereupon delivered the same to the Treasurer, who, on the receipt thereof, immediately transferred the whole of said military fund to the general revenue fund, thus leaving nothing in the State treasury, so far as the books of the Auditor and Treasurer show, for the payment of the relator's claim, or the claims of others, against said military fund;

that the Auditor and Treasurer, at the time of the transfer on the books of their respective offices of the military to the general fund, as above stated, had actual knowledge of divers just and legal claims against said military fund, for and on account of expenses incurred and services rendered under the provisions of said Military Code during the year ending June 30, 1883.

The foregoing facts are substantially admitted by the answer to the petition, but the respondents maintain that the facts thus admitted are insufficient to entitle the petitioner to the relief prayed, and whether they are, or not, is the ultimate question for determination. Before proceeding directly to its discussion, it will be necessary to advert briefly to the general legislation relating to the subject, and call special attention to such provisions of the statute as will necessarily affect, or, rather, control, our conclusion in the case.

In 1877 the legislature passed a general law providing for the re-organization of the militia of the State, which was entirely remodeled by the act of 1879. (See Laws of 1877, page 131, and Laws of 1879, page 192.) By the first section of article 10 of the latter act, a tax of one-tenth of a mill on each dollar of taxable property in the State is required to be levied, collected and set apart as the military fund of the State, three-fourths of which is directed to "be annually divided, distributed and paid by the Governor and Adjutant-General of (to) the several regiments, battalions, companies and batteries, in proportion to the number of officers and men regularly reporting for duty in each of them, respectively, for the payment of armory rent, fuel, lights, insurance, and like necessary expenses, and for the subsistence and pay of the officers and men." By the first section of the military appropriation act of 1881, it is provided "that there be and is hereby appropriated, to pay the expenses of the Illinois National Guard for the years ending July 1, 1882,

and July 1, 1883, the proceeds of the levies now authorized by the Military Code to be made annually for State military purposes." By the second section of the act the Auditor is authorized and directed to draw his warrant upon the Treasurer for the amount of this tax, "*upon presentation of the proper vouchers;*" and the Treasurer is required to "pay the same out of the proper funds in the treasury not otherwise appropriated, *to the order of the persons entitled thereto.*" (See Laws of 1881, page 50.) By the first section of the Military Appropriation act of 1883 there is appropriated, "to pay the expenses of the Illinois National Guard for the years ending July 1, 1884, and July 1, 1885, the sum of $75,000 per annum." The second section of this act is a literal copy of the second section of the act of 1881, above cited, hence the Auditor is not authorized, under it, to draw any warrants on the Treasurer, except "*upon the presentation of the proper vouchers.*" The third section repeals section 1, article 10, of the act of 1879, authorizing the levy and collection of one-tenth of a mill on the dollar for military purposes. The fourth and last section provides as follows: "That any unexpended balance that may be in the State treasury to the credit of the military fund on the first day of July, 1883, shall be transferred, on the warrant of the Auditor of Public Accounts, to the general revenue fund, and that any military tax collected from the levy of 1882, and paid into the State treasury after July 1, 1883, shall also be placed to the credit of the general revenue fund." It is upon the construction of this fourth section of the act of 1883 the present controversy mainly turns.

The respondents maintain that the expression, "*any* unexpended balance," includes every part of the fund which has not been actually paid out of the treasury prior to the first day of July, without regard to existing claims against it, however just and well founded, and that such unexpended balance should at once, on the commencement of the new

fiscal year, be transferred on the books of the Auditor and Treasurer to the general revenue fund. We do not concur in this view. By the term "unexpended balance," we understand the legislature to mean whatever may remain of the fund after the payment of all proper and just claims against it which accrued during the year ending on and including the whole of the 30th day of June, and the fact that a part of these claims have not been actually paid before the first day of July will make no difference in this respect. It will be sufficient if they are adjusted and paid at any time before the fund lapses under the provision of the constitution hereafter referred to; but all such claims against the fund paid after the first of July must be adjusted and paid with reference to the state of the accounts on and including the last day of June, and this, we think, is all that was intended by the fourth section of the act of 1883. We fail to perceive anything in that section which fixes the exact time when the actual transfer of this "unexpended balance" on the books of the Auditor and Treasurer must be made. Judging from the analogies of the law upon like questions, we think we are warranted in saying the legislature must have intended a reasonable time should be allowed for ascertaining such unexpended balance; and as to what would be a reasonable time, we think section 18, article 4, of the constitution, has an important bearing. It declares: "Each General Assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session; * * * and all appropriations, general or special, requiring money to be paid out of the State treasury from funds belonging to the State, shall end with such fiscal quarter." By a well settled construction of this provision of the constitution, all appropriations, whether general or special, when otherwise unlimited, will continue in force and be available for the purposes for which

they were made until the expiration of the first fiscal quarter after the adjournment of the next regular session of the legislature, at which time all appropriations must lapse, and cease to be of any validity. *The People ex rel. Freeman* v. *Lippincott, Auditor,* 64 Ill. 256; *The People ex rel. Harts* v. *Lippincott, Auditor,* 72 id. 578.

Being of opinion, under authority of the cases just cited, the appropriation of 1881 for the fiscal years of 1882 and 1883 continues available for the payment of all just claims against said fund for said years, respectively, until the first day of next October, it was not, and is not, in the power of the respondents to defeat such claims by a transfer on the books of their respective offices of the fund in question to the general revenue fund, as was done, and we are, moreover, of opinion that such transfer was premature and unauthorized. The construction, however, which they placed upon the act was by no means a constrained or an unnatural one, if we look alone to the literal terms of the act. It is just such a mistake as conscientious and careful ministerial officers entrusted with the disbursement of public moneys would have been likely to have made, and it is only by looking to other provisions of the statute, the construction heretofore given to the constitution, and the inconveniences and hardships that would necessarily result from the construction given to the act by them, we feel constrained to adopt a different one.

On the other hand it is contended, that whenever the Governor and Adjutant-General have made a distribution of the military fund for a given year, as required by the act of 1879, and have, in pursuance of such distribution, directed the Auditor to draw his warrant in favor of the commanding officer of some particular division of the service, as, the captain of a company, for the amount of the share of the division represented by such commanding officer, the Auditor will be bound to do so, although nothing appears to show the actual

expenditures of such division of the service. We can not yield our assent to this view of the law, either. As we understand it, the annual distribution required to be made by the Governor and Adjutant-General is not for the purpose of ascertaining the total amount which is to be paid absolutely to each company for that year, but, on the contrary, the object of it is to make an equal and equitable distribution of the fund, for the purpose of being drawn on to meet the actual and legitimate expenses of each company or other subdivision of the service,—in other words, the distribution in question fixes the outside limits of the expenditures of each company or other subdivision, beyond which it is not permitted to go. The actual expenses of some of the companies may be, and probably will be, less than their respective shares under the allotment or apportionment of the total fund. In such case, if the total amount were drawn out by the officer in command, what would be done with the excess over and above the actual expenses? It is evident neither he nor his men would be entitled to it, for the law has fixed his and their compensation, and its payment is fully provided for. It is hardly necessary to say the legislature could never have intended any such results. It is to be specially noted that the appropriation is only to be used for certain enumerated purposes, and other "like necessary expenses," and this clearly negatives the idea there was any intention on the part of the legislature that the total appropriation for military purposes, or any part of it, should be divided among the different commands, without regard to their actual, legitimate expenses. While the relator, in certain portions of the petition, particularly the prayer, seems to concede this view of the law, yet when he comes to state the facts upon which he relies to put the respondents in default and show a right to the relief prayed, he wholly fails to make out a case in harmony with such view. It is clear, from his own statements appearing in the petition, the $579.24 for which he

demands a warrant on the treasurer is simply the result or product of the division of the total appropriation for the present year, based exclusively upon the relative numerical strength of the company which he represents, without relation to the actual expenses of that company. Indeed, it is not claimed that the sum in question in any sense represents the actual expenditures of the company, and there is nothing before us from which we can ascertain, or even approximate, the company's actual expenses. Under this state of facts we have no hesitancy in holding the Auditor properly refused to issue his warrant upon the Treasurer for the amount demanded.

But the case made by the petition is defective—fatally so—in another respect. Whatever may have been necessary, under the acts of 1877 or 1879, to authorize the Auditor to issue a warrant on the military fund, it is clear he has no authority to issue such a warrant either under the act of 1881 or 1883, except *"upon the presentation of the proper vouchers,"* showing the warrant is issued on account of legitimate and proper expenses incurred under the provisions of the Military Code. The presentation of such vouchers is expressly required by both of the acts last mentioned, as a condition precedent to the drawing of a warrant on that fund, and this is conceded by counsel. But the relator insists the facts alleged in the petition show a sufficient compliance with these acts in the respect mentioned. We do not think so. By a familiar rule of pleading the allegations in the petition must be taken most strongly against the petitioner. Viewing them in that light, inasmuch as the relator does not claim that the direction of the Governor and Adjutant-General to the Auditor to issue the warrant in question was in writing, it must be assumed it was a mere verbal order, and hence could not be filed in the office of the Auditor as evidence of the warrants having been issued by their authority, therefore such verbal order lacked the most essential element of a

voucher, and consequently was not, in contemplation of law, a voucher at all. But we go further, and hold the mere written order of the Governor and Adjutant-General, in the absence of any account, bill of particulars, or other specifications showing the character of the expenditures or on what account the warrant was to be drawn, would be clearly insufficient. The term "voucher," when used in connection with the disbursement of moneys, implies some written or printed instrument in the nature of a receipt, note, account, bill of particulars, or something of that character which shows on what account or by what authority a particular payment has been made, and which may be kept or filed away by the party receiving it, for his own convenience or protection, or that of the public. Nothing of that kind was done in this case, or offered to be done, hence the Auditor properly refused to issue the warrant in question, and for this and other reasons stated the peremptory writ of *mandamus* will be denied.

As the transfer of the military fund to the general fund was unauthorized and prematurely made, of course it will be no excuse for a refusal to pay any legitimate and properly authenticated claim against the fund that may be presented between this and the first of October, and the military fund should be restored on the books of the Auditor and Treasurer, as it was before such transfer occurred.

*Mandamus denied.*

Mr. JUSTICE SCOTT: I concur in denying the peremptory writ of *mandamus* in this case, but I do not concur in that portion of the opinion which declares the act of the Auditor in transferring, on the 1st day of July, 1883, the "unexpended balance" in the State treasury on that day to the credit of the "military fund," to the "general revenue fund," by his warrant for that purpose, was unauthorized, and premature. I am of opinion it was his plain duty, under the statute, to do so.