(No. 41694.—

Continental Illinois National Bank and Trust Company of Chicago, Trustee, Appellant, *vs.* The Illinois State Toll Highway Commission *et al.,* Appellees.

*Opinion filed March 27, 1969.—Rehearing denied May 28, 1969.*

HERBERT A. FRIEDLICH, ROBERT L. STERN, and JACK GUTHMAN, all of Chicago, (MAYER, FRIEDLICH, SPIESS, TIERNEY, BROWN & PLATT, of counsel,) for appellant.

ALEX R. SEITH and SOLOMON GUTSTEIN, Special Assistant Attorneys General, of Chicago, (R. R. McMAHAN, JOSEPH E. COUGHLIN, and LORD, BISSELL & BROOK, of counsel,) for appellees.

Mr. JUSTICE WARD delivered the opinion of the court:

The appellant brought an action in the circuit court of Cook County seeking to have the Illinois State Toll Highway Authority Act (Authority Act) declared unconstitutional. The appellant and the appellees later moved for summary judgment. The trial court entered judgment in favor of the appellees, upholding the constitutionality of the Act, as amended, and the appellant has appealed directly to this court. The Authority Act (Ill. Rev. Stat. 1967, ch. 121, par. 100—1 to 100—35, as amended 1968, Laws of 1968, p. ——, Sen. Bill, No. 2072) is the successor to and in many respects resembles the Illinois State Toll Highway Commission Act (Commission Act) (Ill. Rev. Stat. 1967, ch. 121, par. 314a26 to 314a54) which was held constitutional by this court in *People* v. *Illinois State Toll Highway Com.* (1954), 3 Ill.2d 218. The appellant is the trustee for persons holding more than $300,000,000 in outstanding Northern Illinois Toll Highway revenue bonds which were issued under the bond resolution of the Illinois State Toll Highway Commission (Commission) of October 25, 1955.

The Authority Act was to have become effective April 1, 1968. However, through proceedings in the trial court the effective date of the Act has been stayed pending the resolution of the questions being considered here.

The appellant first contends that the Authority Act is

void because, as originally enacted, it violated section 16 of article IV of the Illinois constitution, and it is argued, the defect could not be cured by a later amendment.

The constitutional provision concerned, in pertinent part, states: "Bills making appropriations * * * for the salaries of the officers of the government, shall contain no provision on any other subject." The original section 35(a) of the Authority Act did contain an appropriation for salaries of members of the Illinois State Toll Highway Authority (Authority). However, during the pendency of the proceedings in the trial court the legislature passed emergency amendatory legislation (to become effective August 20, 1968) which *inter alia* amended section 35(a) by deleting the appropriation for officers' compensation and setting up such appropriation in a separate Act, August 20, 1968, (Laws of 1968, pp. ——, Sen. Bills Nos. 2071, 2072). It is unnecessary for us to determine whether section 35(a), as originally enacted, was valid, as we judge that the amendments described effectually remedied the defect, if any, claimed by the appellant. *Krause* v. *Peoria Housing Authority,* 370 Ill. 356, 371; see *Chatkin* v. *University of Illinois,* 411 Ill. 105, 106-111, and *Sipple* v. *University of Illinois,* 4 Ill.2d 593; see also, *Lennox* v. *Housing Authority of Omaha,* 137 Neb. 582, 588, 290 N.W. 451, 456.

Many of the appellant's constitutional objections to the Authority Act claim alleged ambiguities in and conflicts between various sections of the statute. It appears appropriate that before undertaking consideration of these objections we restate some of the guidelines this court has developed in reviewing the constitutionality of statutes. We will presume that the legislature intended to enact a valid law. It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can reasonably be done, and further if their construction is doubtful, the doubt will be decided in favor of the validity of the law challenged. (*Illinois Crime Investigating Com.* v. *Buccieri,* 36

Ill.2d 556, 561, and cases there cited.) Similarly, "It is our duty to so interpret a statute as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity." *Craig* v. *Peterson,* 39 Ill.2d 191, 201; accord, *People* v. *Nastasio,* 19 Ill.2d 524, 529.

A complaint by the appellant of the type described in the preceding paragraph is that section 33 of the Authority Act is unconstitutionally unclear and imprecise. Specifically, the objections are that the language of the section is conflicting as to when the Commission's property will pass to the Authority; that it leaves in doubt the status of the Commission and the relationship between the Commission and the Authority; and that it fails to bring into existence a fully functioning Authority to administer existing toll highways in this State.

Section 33, as amended, reads:

"On April 1, 1968, all duties, obligations, functions and powers of The Illinois State Toll Highway Commission, together with all property, whether real or personal, rights, privileges, interest and any and all other assets whether real, personal or mixed, shall be transferred to and shall vest in The Illinois State Toll Highway Authority, which shall own, operate and control the same in accordance with the provisions of 'An Act in relation to the construction, operation, regulation and maintenance of a system of toll highways and to create The Illinois State Toll Highway Commission, and to define its powers and duties and to repeal an Act therein named', approved July 13, 1953, as amended, and all terms, covenants and conditions set forth in any resolutions heretofore or hereafter adopted authorizing and providing for the issuance of Revenue Bonds by The Illinois State Toll Highway Commission under 'An Act, in relation to the construction, operation, regulation and maintenance of a system of toll highways and to create The Illinois State Toll Highway Commission, and to define its powers and duties and to repeal an Act therein named', ap-

proved July 13, 1953, as amended, except as herein provided. The chairman and commissioners of The Illinois State Toll Highway Commission shall serve as the chairman and directors, respectively, of the Authority, with all of the rights, privileges and emoluments of such officers until such appointments are made by the Governor under Section 3 of this Act.

"It is the intention and purpose of this Section to transfer management and operation of the existing toll highways of the Illinois State Toll Highway Commission to the board of directors of The Illinois State Toll Highway Authority, but to require that the Authority comply with all covenants, conditions, terms and provisions imposed by 'An Act in relation to the construction, operation, regulation and maintenance of a system of toll highways and to create The Illinois State Toll Highway Commission, and to define its powers and duties and to repeal an Act therein named', approved July 13, 1953, as amended, until after all obligations of any kind or character whatsoever incurred by The Illinois State Toll Highway Commission under that Act have been paid in full from revenues, or income from whatever source derived, including but not limited to bonds issued under Section 17 herein. Title to such toll highway or toll highways after all such obligations have been paid in full shall be vested in the Authority hereby created, and the Authority hereby created is authorized to continue to establish tolls, rates and charges for use of such facilities and pledge the income therefrom, after maintenance and operation costs, to the payment of any or all bonds issued under this Act, until all bonds issued by the Authority under this Act have been paid in full, notwithstanding any other law to the contrary."

We do not find the sections fatally vague and imprecise. The purpose of the section and its provisions for the time and procedure of transfer from the Commission to the Authority are adequately clear and definite. Section 33 in ex-

plicit terms provides: "On April 1, 1968, all duties, obligations, functions and powers" of the Commission and "all" its "property" "shall be transferred to and shall vest" in the Authority, subject only to the qualification that the Authority "shall own, operate and control same in accordance with the provisions" of the Commission Act, as amended, and in accordance with "all terms, covenants and conditions set forth in any resolutions * * * for the issuance of Revenue Bonds" adopted thereunder, "except as herein provided." Then, after "all such obligations [of the Commission under that Act] have been paid in full" provision is made in the last sentence of the section for the Authority's retention of title to the toll highways until the retirement of all bonds issued by the Authority.

Further, it is plain that the "intention and purpose" of the section *inter alia* is to dissolve the Commission and "transfer management and operation of the existing toll highways" of the Commission "to the board of directors of the Illinois State Toll Highway Authority." To achieve an orderly transition, section 33 expressly provides that the "chairman and commissioners of The Illinois State Toll Highway Commission shall serve as the chairman and directors, respectively, of the Authority, with all of the rights, privileges and emoluments of such officers until such appointments are made by the Governor under Section 3 of this Act." This clause ensures the existence from the effective date of the Act until appointments are made pursuant to section 3 of a governing Authority to administer the commission toll roads. It is vested with full powers granted by the Authority Act, including, for example, the power, under section 14, to propose new toll highway routes.

The appellant also objects that the "exception" clause in section 33 is wanting in clarity. As seen, amended section 33 provides that the Authority shall fully comply with the provisions of the Commission Act and honor the outstanding obligations imposed by any bond resolutions adopted

thereunder, "except as herein provided." As originally enacted, this clause read "except as herein *in this Act* provided." (Emphasis added.) Thus, in one of its only two amendments to this lengthy section, one year later, the legislature deleted the words "in this Act" from this clause. "[T]he presumption is that every amendment of a statute is made to effect some purpose, and that effect must be given the amended law in a manner consistent with the amendment." (*Acme Fireworks Corp.* v. *Bibb*, 6 Ill.2d 112, 117.) It is evident that the purpose of such amendment was to reduce the scope of the exception clause from the entire Act and to confine it solely to section 33. A review of section 33 discloses that the exception clause can refer only to the last sentence of the section, since this is the only provision in the section at variance with the superseded Commission Act. By the last sentence's terms, as seen, when the Commission's obligations are paid in full, the Authority is to retain title to toll highways "until all bonds issued by the Authority under this Act have been paid in full." This provision was designed to annul and replace a clause in section 17 of the Commission Act which would have caused title to Commission toll highways to be transferred to the State of Illinois immediately on retirement of the Commission's bonds. Restating, the manifested legislative intent and purpose are that the Authority is to honor "all obligations of any kind and character" incurred by the Commission under its Act, except, when such obligations are fully satisfied, title to toll highways is to pass to the Authority as provided in the Act, rather than pass to the State of Illinois as was provided in the Commission Act. The meaning of the exception clause certainly is not unconstitutionally vague as the appellant contends.

We judge to be without merit the claim that a provision of section 17 of the Authority Act unconstitutionally impairs the obligations of the bondholders' contract under the bond resolution of the Commission, and deprives them of

due process of law, by permitting the Authority, before Commission bonds are satisfied, to use revenues derived from toll roads to satisfy new bonds issued under the Authority Act.

Section 4.05 of the bond resolution of the Commission pledges the toll revenues of the Commission roads and all other income derived therefrom (except amounts needed for maintenance and operational expenses) to secure the payment of principal and interest on the bonds issued under the resolution. Sections 7.04 and 7.13 of the resolution prohibit any other liens upon such revenues, and the Commission in section 7.10 covenants that none of these revenues ·will be used for any purpose other than as provided in the resolution. The portion of section 17 challenged by the appellant states that all bonds issued under the Authority Act to finance toll highways, and interest thereon, "shall be payable from revenues derived from the operation of any one or more of the toll highways owned or operated by the Authority or any other income from whatever source derived." This clause cannot be read in isolation, but must be considered in conjunction with other provisions of the Act which clearly express the legislative intent that the rights of the Commission's bondholders shall be honored and protected. Section 33 of the Act unequivocally declares that its "intention and purpose" *inter alia* is "to require" that the Authority "comply with all covenants, conditions, terms and provisions imposed by" the Commission Act "until after all obligations of any kind and character whatsoever incurred by" the Commission under that Act "have been paid in full." In other words, the Authority cannot incur additional obligations against the Commission's road revenues until all obligations authorized by the Commission have been paid in full. We consider, too, that this would prohibit the Authority from incurring such additional obligations until any additional bonds which could have been issued by the Commission under the terms of its bond resolution, adopted

October 25, 1955, and which may be issued, also have been paid in full.

Relatedly, in amended section 35(b) of the Authority Act, the legislature specifically provides against the use of Commission road revenues for other unrelated expense or costs of the Authority, such as expenses of other toll roads or officers' salary increases. That section in pertinent part declares that "no charges or expenses of any kind shall be made to any of the funds or accounts created by virtue of the issuing of bonds under [the Commission Act] except those necessary to the maintenance, administration and operation of the existing toll highway constructed under the provisions of the [Commission] Act."

Where the spirit and the intent of the General Assembly in adopting an act are clearly expressed and its objects and purposes are clearly set forth, courts are not bound by the literal language of a particular clause which would defeat the obvious intent of the legislature. Where verbal inconsistency appears, incongruous words may be modified, changed or rejected in order to arrive at a construction conforming to the otherwise clear legislative intention. (*Harding* v. *Albert,* 373 Ill. 94, 96, 97; *Baker & Conrad, Inc.* v. *Chicago Heights Construction Co.,* 364 Ill. 386, 392, 393.) We will not place on the criticized clause the confined and literal construction urged by the appellant. We judge that the legislature intended and manifested unmistakably that while Commission bonds remained outstanding, revenues derived from Commission toll roads would be excluded from the operation of the section 17 clause and would be unavailable for the payment of unrelated bonds issued under the Authority Act.

It is argued by the appellant that the transfer of assets from the Commission to the Authority impairs the bondholders contractual rights, because the bond resolution prohibits such a transfer. However, an examination of the resolution discloses that it expressly contemplates and con-

siders the succession of a governing body such as the Authority. Resolution section 1.01(g) specifies that: " 'Commission' means the Illinois State Toll Highway Commission * * * and any successor or successors, including any * * * authority * * *, who may be authorized to construct, operate or maintain the Toll Highway." Further, section 12.03 of the resolution declares that whenever the Commission is named or referred to in the resolution, "such reference shall be deemed to include the successors or assigns thereof, and all the covenants and agreements in this Resolution contained by or on behalf of the Commission shall bind and inure to the benefit of the respective successors and assigns thereof whether so expressed or not." Nothing appears in the resolution concerning the composition or structure of the governing authority which would restrict government to the Commission.

The appellant, citing section 31(a) of the Authority Act, charges that the Authority Act extinguishes the bondholders' judicial remedies against the Commission, as afforded by section 27(a) of the Commission Act and section 9.02 of the bond resolution. However it is clear that it was intended by the legislature that the right of the bondholders to bring suits was to be preserved under the Authority Act. As we already have observed, section 33 of the Authority Act, expressly directs the Authority to administer the existing toll highways of the Commission "in accordance with" the provisions of the Commission Act and to comply with "all terms, covenants and conditions set forth in any resolutions" at any time adopted by the Commission.

The appellant's argument that an operative advisory committee, as required by section 3.1 of both the Commission and Authority Acts, would not be existent on the effective date of the Authority Act is not persuasive. Insofar as is pertinent here, the Authority Act's provision for an advisory committee to the Authority, including its composition and function and the method and time of its selection,

is a duplicate of the corresponding provision in the Commission Act. It is reasonable to conclude that the legislature obviously intended that in the transition from the Commission to the Authority the committee appointed under the Commission Act was to continue to operate under the Authority Act. Too, the legislature expressly provided that the chairman and commissioners of the Commission were to serve as chairman and directors of the Authority and it would be unreasonable to assume that it was not likewise intended that the advisory committee would be continued in the Authority to make available its supporting advice and counsel to the chairman and directors.

The Authority Act, as has been seen, provides the chairman and commissioners of the Commission are to serve temporarily as chairman and directors of the Authority until appointments have been made by the Governor under section 3 of the Act. The statutory annual salary of the chairman was set at $12,000 and each commissioner's was set at $10,000 at the time they were appointed under the Commission Act. However, the annual salaries set by the Authority Act, as amended, would be $18,000 for the chairman and $15,000 for each director of the Authority. Though it does not appear to be contended that the entire Act would be invalidated by the provision, the appellant argues that any payment of the increased compensation to the holdover members of the Authority during what would have been the remainder of their terms on the Commission would be unlawful. It cites section 23 of article V of the Illinois constitution which declares that the salaries of certain officers "shall not be increased or diminished during their official terms * * *." Assuming the validity of the appellant's position in this, it does not appear to pose any problem of substance here. Under the established construction of similar provisions, the increased remuneration provided under the Authority Act would be first available only to a chairman or director originally appointed to the Authority, under

section 3 of the Act, after the effective date of the Act, April 1, 1968. (See *Peabody* v. *Russel,* 301 Ill. 439, 440, 445; *Wolf* v. *Hope,* 210 Ill. 50, 65; see also 67 C.J.S. Officers, 95 (d).) It would appear that holdover members from the Commission thus would not be eligible for the increased remuneration, even if reappointed under section 3, until their terms as measured under the Commission Act would expire.

It is urged, too, by the appellant that the procedure provided in section 3 of the Authority Act for the appointment of temporary directors is violative of article III and of sections 10 and 11 of article V of the Illinois constitution.

Section 3 of the Authority Act states that the Governor, excepting the *ex-officio* directors, shall appoint the seven directors of the Authority "with the advice and consent of the Senate." The provision in this section which is specifically challenged then declares: "If the Senate is not in session at the time this Act takes effect, the Governor shall make temporary appointments as in the case of a vacancy with the advice and consent of an interim committee composed of 3 members of the Senate appointed by the President Pro Tempore thereof and 3 members of the House of Representatives appointed by the Speaker thereof." Other provisions of the section insure the existence of such an interim committee to advise and consent relative to other future temporary appointments to be made when the Senate is not in session.

The challenged portion of section 3, as can be seen, provides that if the Senate is not in session when the Act becomes effective an interim committee is to be appointed to advise and consent to the Governor's original temporary appointments of directors. Article III of the constitution is a separation-of-powers provision and section 10 of article V states: "The governor shall nominate, and by and with the consent of the senate  *  *  *  appoint all officers whose offices are established by this constitution, or which may be

created by law, *and whose appointment is not otherwise provided for;* and no such officer shall be appointed or elected by the general assembly." (Emphasis added.) Speaking specifically of these constitutional provisions, this court has said: "The implication of this section [article V, section 10] is that, aside from constitutional officers, offices which are created by statute may be filled by such method of appointment as the General Assembly may provide. * * * Nor do we believe that the requirement of the mayor's approval of the Governor's [full term] appointments contravenes article III of the constitution. As we have seen, the method of appointment, other than of constitutional officers, is solely within the discretion of the legislative branch. [Citations.]" (*People ex rel. Tuohy* v. *Chicago Transit Authority,* 392 Ill. 77, 97-98; accord, *People ex rel. Gutknecht* v. *Chicago Regional Port District,* 4 Ill.2d 363, 379, 380; see, *People* v. *Evans,* 247 Ill. 547, 555, 556, 557; *Perkins* v. *Commissioners of Cook County,* 271 Ill. 449, 461.) We hold that the method provided in the Act for the temporary appointment of directors to serve until the next session of the senate is not prohibited by our constitution.

The appellant maintains that possible changes in the composition of the governing body under the Authority Act, from the Commission Act, will abridge the contractual rights of the bondholders. The argument is centered on the statement in section 3 of the Authority Act which says: "It is the intention of this section that the Governor's appointments [to the Authority] shall be made with *due consideration* to the location of proposed toll highway routes so that maximum geographic representation from the areas served by said toll highway routes may be accomplished *insofar as practicable.*" (Emphasis added.) The appellant complains that this will result in appointment of directors partial to their own areas of the State and will result in prejudice against the existing toll highway system in northeastern Illinois covered by the bond resolution of the Commission.

First, it is to be observed that the lengthy (109-page) resolution of the Commission is silent on the question of the composition and method of selection of members of the body governing the toll highways. Thus, no "right" relative to the composition of the members has been given bondholders. Too, the Authority Act, section 3, expressly requires, as also did the Commission Act, that the directors be appointed "from the State at large." Also, the Act does not require the Governor to make these appointments on a basis of geographical representation. It states only that "due consideration" be given to this question so that such representation may be had "insofar as practicable." We deem that the allegation of prejudice to the bondholders because of this provision is gratuitous and unreasonable.

The Authority Act makes unlawful delegations of legislative power to the Authority, the appellant also argues, due to an asserted absence in the Act of adequate standards to govern and guide the administrative body's actions. As the appellant concedes, the provisions of the Act under this attack are "substantially identical" to corresponding sections of the predecessor Commission Act. That Act, as has been stated, was found to be constitutional by this court in *People* v. *Illinois Toll Highway Com.*, 3 Ill.2d 218. Our court considered there argument essentially similar to the one made by the appellant here and it was expressly ruled that the delegation to the Commission was valid. (3 Ill.2d at 231 to 233 (also 230) and cases cited there.) It would be without value to consider again these contentions.

Another contention of the appellant is that the provision in section 17 of the Authority Act concerning the Governor's authority with respect to bond and related resolutions is unconstitutionally indefinite and uncertain. The basis of this contention is that the words "and shall be valid only upon approval by the Governor" appear in the equivalent clause in section 14 of the Commission Act, and this language has been omitted from the section 17 provision. The section 17

provision, with the omitted language added in parentheses, reads: "Any resolution authorizing the issuance of the bonds may include provision for the issuance of additional bonds for the completion or improvement of the toll highway or toll highways or for an additional toll highway or toll highways on a parity with the bonds originally issued thereunder (and shall be valid only upon approval by the Governor). *All other resolutions* of the Authority to carry such approved resolution into effect, to provide for the sale and delivery of the bonds for the construction of the toll highway or toll highways intended to be constructed out of the proceeds of said bonds, for letting of contracts for the construction of such toll highway or toll highways and the acquisition of real and personal property deemed by the Authority necessary or convenient for the construction thereof *shall not require the approval of the Governor* or of any other department, division, commission, bureau, board or other agency of the state." (Italics added.)

As is germane here, apart from this omission of language, this section 17 provision is an exact copy of the corresponding clause in the Commission Act. It is to be observed that the second sentence of this provision of section 17, in pertinent part, declares that "All other resolutions of the Authority * * * shall not require the approval of the Governor * * *." As the appellant recognizes, the implication to be drawn from this is that the Govenor's approval is required in situations covered by the first sentence of the clause which begins, "Any resolutions authorizing the issuance of the bonds." Considering, insofar as is relevant, the otherwise exact correspondence between the pertinent sections of the Commission and Authority Acts and the statement in the second sentence quoted from section 17 that "all other resolutions * * * shall not require the approval of the Governor" it is plain to us that the omission of language was inadvertent. Too, it is to be noted that the provisions relating to the functions and powers of the Gov-

ernor under the Commission Act are not diminished under the Authority Act but are continued essentially unaltered. In at least one instance the Governor's participation is enlarged under the Authority Act, *viz.,* he must approve the proposed route of any additional toll highway.

A construction should be adopted which it is reasonable to presume was contemplated by the legislature. (*Board of Education* v. *Brittin,* 11 Ill.2d 411, 414.) "[W]hile courts are and should be cautious about adding words, as such, to a statute generally, they will not hesitate to read into the sense of some section or provision a qualifying or expanding expression plainly implied by the general context of the act, which has been palpably omitted and which is necessary to prevent the legislative purpose from failing in one of its material aspects." (*People ex rel. Barrett* v. *Anderson,* 398 Ill. 480, 485; see also *Trustees of Schools* v. *Sons,* 27 Ill.2d 63, 66.) Here, as we have stated, it is clear that the omission from section 17 discussed was through oversight by the legislature. In accord with the manifested and dominating expression of legislative intent, we conclude that any resolution authorizing the issuance of bonds under section 17 of the Authority Act "shall be valid only upon approval by the Governor."

It is urged, too, that sections 18 and 35 of the Authority Act sanction a loan or extension of the State's credit and thus contravene section 20 of article IV of the Illinois constitution. Amended section 35(a) of the Act appropriates $1,914,000 from the Road Fund to the Authority for the payment of certain "ordinary and contingent expenses" of the Authority necessary to finance engineering and traffic studies to determine the feasibility of constructing additional toll highways and other purposes. Section 35(c) and section 18 of the Act provide for the repayment of this amount by the Authority to the State Treasurer.

Section 20 of article IV, as is relevant here, states: "The State shall never \* \* \* in any manner give, loan, or

extend its credit to, or in aid of any public or other corporation, association or individual." As is pertinent here, the purpose of the provision, which is complementary to section 18 of article IV, is to prohibit the State from contracting debts as a guarantor or surety so as to protect the State from incurring an excessive public indebtedness. (See *Hagler* v. *Small,* 307 Ill. 460, 467,473; *Fairbank* v. *Stratton,* 14 Ill.2d 307, 315.) As such, it is not directed at a loan, as here. The case of *Fairbank* v. *Stratton,* 14 Ill.2d 307, illustrates this distinction. There this court held that the State Treasurer could lawfully purchase revenue bonds issued by the Metropolitan Fair and Exposition Authority, as we concluded: "The transaction in question involves only a purchase or loan. There is a loan of State funds, not of State credit. The State is not undertaking to become a surety or guarantor of payment of the bonds. It would be in the position of a creditor, rather than that of a debtor which arises upon a loan of credit. We conclude that the provisions of section 20 of article IV of the constitution have no application with respect to the contemplated purchase." (14 Ill.2d at 315.) Too, in upholding the constitutionality of the Commission Act, this court ruled that an outright appropriation for the payment of certain salaries did not infringe section 20 of article IV of the constitution, as the appropriation was for a public purpose. (3 Ill.2d at 229, 230.) Here, of course, the questioned appropriation is for a public purpose, and it certainly would be a confusing anomaly if under the constitutional provision concerned an appropriation would be valid if made outright, but invalid, as the appellant contends, if made repayable to the State.

Another argument of the appellant is that the appropriation contained in amended section 35(a) of the Act, just discussed, constitutes a continuing appropriation in violation of section 18 of article IV of the Illinois constitution. We find no such constitutional problem with this appropriation. "By a well settled construction of this provision of

the constitution [Article IV, section 18], all appropriations, whether general or special, when otherwise unlimited, will continue in force and be available for the purposes for which they were made until the expiration of the first fiscal quarter after the adjournment of the next regular session of the legislature, at which time all appropriations must lapse, and cease to be of any validity." (*People ex rel. Polen* v. *Hoehler,* 405 Ill. 322, 329, quoting *People ex rel. Brinkerhoff* v. *Swigert,* 107 Ill. 494; accord, *People ex rel. Millner* v. *Russel,* 311 Ill. 96, 111.) The otherwise unlimited appropriation challenged, if not fully expended, will thus lapse by operation of law on September 30, 1969, which is the end of the first fiscal quarter after the adjournment of the appropriate "next" regular session of the General Assembly. *Bowes* v. *Howlett,* 24 Ill.2d 545, cited by the appellant, is not in point. There, unlike here, the legislature had clearly and improperly evidenced an intent to make a continuing appropriation while bonds with a 40-year maximum maturity remained outstanding.

We have examined the remaining contentions of the appellant and have found them to be without merit. To specify, we judge that the appropriation contained in section 35(a) of the Authority Act is for a single general purpose and thus adequately specifies the objects and purposes for which it was made (consider: *Lund* v. *Horner,* 375 Ill. 303, 307; *Turkovich* v. *Board of Trustees,* 11 Ill.2d 460, 470); that the Authority Act properly embraces but one subject, which is expressed in its title (consider: *Union Cemetery Association* v. *Cooper,* 414 Ill. 23, 39-40); that the Authority Act, as shown by the duly certified official journal of the senate (see *Spangler* v. *Jacoby,* 14 Ill. 297), was passed in accordance with the requirements of the Illinois constitution; that the explicit emergency clauses in the amendatory senate bills, approved August 20, 1968, satisfied the constitutional requirements for the expression of an emergency (consider: *People ex rel. Tuohy* v. *Chicago Transit Author-*

*ity,* 392 Ill. 77, 96-97; *People ex rel. Tuohy* v. *City of Chicago,* 394 Ill. 477, 488-89) ; and that section 12 of the Act contains no delegation of power to a nongovernmental agency.

The Authority Act is of length, requiring approximately 28 pages of reduced size type for its reproduction in a brief filed here by one of the parties. It is not faultlessly drawn, as some of the numerous points raised by the appellant in behalf of the Commission's bondholders disclose, but, with respect to the objections presented for decision here, it does meet constitutional standards.

Accordingly, the judgment of the circuit court of Cook County validating the Illinois State Toll Highway Authority Act, as amended, is affirmed.

*Judgment affirmed.*